HP

# HESKIN & PROPER, PLLC

641 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone 407-403-5990

Shane R. Heskin, Esquire
Shane@heskinproper.com

Justin E. Proper, Esquire
Justin@heskinproper.com

September 17, 2026

**VIA ECF**

Hon. Paul A. Engelmayer
United States District Judge
40 Foley Square, Room 2201
New York, New York 10007

Re: *Zoo Capital Holdings, LLC, et al. v. Titan Capital GRP, et al.*
No. 26-cv-07224 (PAE) [rel. No. 26-cv-04554 (PAE)]
Emergency Request to Restrain UCC Collection and Expedite Relief

Dear Judge Engelmayer:

We represent Plaintiffs and request an emergency conference and expedited consideration of a temporary restraining order and preliminary injunction stopping Titan Capital GRP's enforcement of its UCC collection notices. Titan has now caused a payment processor to freeze operating receipts while demanding $11,481,250 under the very transactions challenged in this action. Its notice also names Plaintiffs' hospital and affiliated healthcare providers. The Court should not permit disputed, allegedly usurious debt to be collected by cutting off the cash necessary to keep an active healthcare system functioning. Patients' safety and lives cannot be collateral leverage.

**I. Titan has converted its collection threats into an actual freeze**

On September 3, 2026, Ace Recovery Group, LLC, expressly acting as Titan's authorized collection agent, sent Toast a "UCC Lien Notice and Notice of Power of Attorney." Although the notice describes a purchase of 40% of future receivables up to $9,905,000, it directs payment of all sums until Titan receives $11,481,250 and threatens liability for noncompliance. On September 15, Toast's liens-and-levies team confirmed that its processing partner had acted on the notice and that lifting the hold required a creditor release. Plaintiffs reported the resulting freeze of affiliated hospitality accounts on September 16. This is no longer a hypothetical collection threat.

The same notice identifies AD Hospital East, River Oaks Hospital & Clinics, Texas Brain Center, and other healthcare entities. The presently confirmed Toast freeze concerns restaurant receipts. Titan's enterprise-wide demand places healthcare receipts directly in its collection path. AD Hospital East provides emergency and clinical care, and interruption of staffing, medicines, and essential supplies threatens far more than a compensable account balance. Compl. ¶¶ 30–32, 50–57. Plaintiffs seek immediate intervention before that threatened harm becomes irreversible and will support the Rule 65 application with sworn operational and cash-flow evidence.

**II. Titan's own documents expose the unlawful financing and collection scheme**

Titan issued five agreements between June 30 and August 5, 2026, each imposing a 40% markup. Fixed daily debits rose from $10,500 to $60,000 in thirty-six days while the supposedly purchased percentage remained 40%. That arithmetic presupposes daily receipts soaring from $26,250 to $150,000. Plaintiffs allege no corresponding revenue increase. Compl. ¶¶ 58–65. The July 10 agreement requires $2,730,000 on a stated $1,950,000 advance through $22,750 daily debits: a 40% charge over 120 banking days, approximately 86.7% annualized using 260 banking days, before fees and without adjusting for declining principal. This is a conservative simple annualization, not an effective APR.

The refinancing compounded the burden within days. The July 16 balance-transfer instrument authorizes Titan to retain $2,639,000 from the new $3,250,000 transaction, leaving only $611,000 before fees. By August 5, the stated advance had become $7,075,000, the face repayment $9,905,000, and the daily debit $60,000. Compl. ¶¶ 66–73; agreements dated July 10, July 16, and August 5. Titan repeatedly capitalized its existing claims into larger obligations. Its default machinery then converts the purchased percentage to 100% and accelerates collection. The notice now invokes that machinery to seize the operating receipts needed to survive.

Section 1.4 does provide retroactive reconciliation within five business days, but only absent a default or breach; § 1.5 similarly conditions adjustment on no default. Plaintiffs' challenge is that the escalating, advance-driven debits and sweeping default provisions defeat genuine transfer of collection risk. A reconciliation clause cannot be evaluated apart from the provisions that disable it. The Court should examine the entire transaction rather than accept the "sale" label.

*Fleetwood Services, LLC v. Complete Business Solutions Group, Inc.*, 374 F. Supp. 3d 361, 369–73 (E.D. Pa. 2019), addresses precisely this effort to avoid Texas usury protections through purported factoring and an out-of-state choice-of-law clause. Applying Pennsylvania conflicts principles, the court held Texas had the materially greater interest and that its constitutional and statutory prohibition of excessive interest protected commercial borrowers as well as individuals. It rejected reliance on Pennsylvania law to defeat those protections. *Fleetwood* assumed loan status for the dismissal motion rather than finally adjudicating it, but its public-policy analysis is directly persuasive here: the borrowers, operating accounts, healthcare operations, and threatened injury are in Texas. Titan's Connecticut clause cannot defeat that interest. *See Welsbach Electric Corp. v. MasTec North America, Inc.*, 7 N.Y.3d 624, 629–30 (2006) (recognizing the narrow fundamental-public-policy exception).

Texas Finance Code § 303.009(c) caps the relevant commercial rate ceiling at 28%; § 398.004 removes sales-based financing from the account-purchase safe harbor regardless of advance size. The transactions pleaded here exceed even that 28% benchmark. The later instruments' size therefore does not dispose of the Texas claim merely because New York has a $2.5 million usury exemption. Plaintiffs seek equitable protection of their state-law rescission and property claims, not an injunction dependent solely on private RICO relief.

The ACH mechanism presents a separate illegality. Texas Finance Code § 398.056 and 7 Tex. Admin. Code § 86.313 require a perfected, first-priority interest in all receivables before establishing recurring withdrawals. Titan's agreements established those withdrawals in June and July; the UCC financing statement, No. 260004600258, is dated August 12, after even the fifth agreement. That filing cannot retroactively authorize earlier debits or prove first priority. Titan must identify any earlier perfection and establish priority, particularly given the existing senior financing alleged in Compl. ¶¶ 3, 38–49. Plaintiffs invoke this prohibition in support of their illegality and equitable claims, not as a freestanding claim for Chapter 398 penalties.

**III. Bankruptcy requires scrutiny and preservation rather than unchecked collection**

Getter, whom Plaintiffs allege controls Titan and directed its fraudulent financing scheme, filed Chapter 7 on July 7, 2026, in the Southern District of Florida, Case No. 26-18907. *See* Bankruptcy Notice, *Bilyk Investment Group LLC v. Getter*, No. 26-cv-3671, ECF No. 46; Compl. ¶¶ 22, 35–37, 123–40. Four challenged transactions followed that filing. Bankruptcy cannot become a shield behind which Getter continues the same alleged misconduct through Titan while its targets lose access to the funds needed to operate. Florida too has criminal usury laws, which may have been violated.

The funding source and ownership of the collection rights require prompt disclosure. Any petition-date rights belonging to Getter, and their proceeds, implicate 11 U.S.C. § 541(a)(1), (6). Control of Titan alone does not establish that its assets belong to his estate, and Plaintiffs seek no such adjudication on this letter. Nor do they seek relief against Getter personally or distribution of estate property. Instead, they request a reciprocal standstill on disputed enforcement, preservation of records and proceeds, and expedited disclosure of ownership, funding, assignments, and the collection ledger, with notice to the trustee and bankruptcy counsel. Any relief affecting estate property should await the bankruptcy court's authorization or clarification under § 362. An unresolved estate claim is a reason to preserve rights, not to permit Titan to collect first and explain later.

The proposed injunction would bar Titan and its agents, including Ace upon actual notice, from enforcing existing or issuing further payment-diversion demands under these transactions; require withdrawal of the September 3 collection instruction and notice to recipients that ordinary payments may resume; and prohibit further challenged ACH collections pending an expedited hearing. It would preserve filed lien priorities without deciding validity, restrict Plaintiffs to ordinary-course use of released funds with an accounting, and preserve all parties' claims. Article 9 expressly permits a court to restrain noncompliant collection or enforcement. U.C.C. § 9-625(a). Plaintiffs will address security under Rule 65(c).

The threatened loss of an operating business can be irreparable; interrupted patient care cannot be repaired by damages. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 37–38 (2d Cir. 1995). The documentary showing supports likelihood of success, and Plaintiffs will address the heightened clear-or-substantial-likelihood standard insofar as restoring payments is mandatory relief. *Id.* at 33–35. A short, accountable standstill protects any lawful collection claim; continued diversion risks destroying the businesses and compromising care before the Court can rule. The balance of hardships and public interest favor immediate protection.

We request a conference and an expedited Rule 65 schedule under Individual Rules 3.N–O, without delaying emergency consideration for an otherwise unnecessary pre-motion conference. On September 16, 2016, I advised counsel for Defendants of this anticipated application. Plaintiffs will present the notices, processor confirmation, contracts, declarations, and a proposed order with their application.

Respectfully submitted,
**HESKIN & PROPER, PLLC**

Shane R. Heskin
*Counsel for Plaintiffs*